## WHITE VS. PRIGMORE.

1. JURISDICTION OF SUPREME COURT: *To render judgment on supersedeas bond.*

   The sureties in a supersedeas bond become, in legal effect, parties to the suit, under our statute, and agree, in case of affirmance, that judgment may be rendered against them by the supreme court for costs and damages and the amount of the judgment below, and a judgment so rendered is not void for want of jurisdiction.

2. TENDER: *Of state scrip for a money judgment.*

   A tender of state scrip in satisfaction of a money judgment, after the party has neglected to plead such facts as would have entitled him to pay in scrip, is too late.

3. —*In part good and part bad, effect of.*

   The tender of an entire sum in state scrip, when a part was payable in money and a part in scrip, is bad as to the whole.

PETITION to quash execution.

*Compton, Martin & Parsons*, for petitioner.

*Cockrell, contra.*

ENGLISH, C. J.   On the 19th of March, 1873, Prigmore obtained a judgment in the circuit court of Grant county against White, for $1,100; and White appealed to this court.

The transcript was filed on the 17th of May, 1873, and White entered into a supersedeas bond, with M. L. Bell and Met. L. Jones as sureties, before the clerk of this court, in the form prescribed by the statute.   Gantt's Dig., 1085.

The judgment was affirmed, and this court rendered judgment against White and his sureties in the supersedeas bond for the amount of the judgment of the court below, ten per cent. damages and costs.   Execution was issued upon the judgment, 4th of April, 1874, to the sheriff of Jefferson county, levied upon lands of White, and returned without sale.   On the 8th July, 1874, a *vend. ex.* was issued, and on the 1st of August following the lands were sold, and purchased by Bell and Jones on a credit of three months, who gave bond for the purchase money, with Bocage as surety.   On a return of purchase money not paid, an execution was issued against Bell, Jones and Bocage, and White applied to this court to recall and quash the execution, and set aside the sale, etc., on the the following grounds :

1. That this court had no constitutional power to render the judgment against White and. his sureties in the supersedeas bond, and that the judgment and the executions issued thereon were null and void

2. That White tendered to the sheriff, before the sale of the lands, the amount of the judgment and costs, in state scrip, which he refused to receive, and proceeded to sell, etc.

I. That this court had jurisdiction to render the judgment against White, on the affirmance of the judgment appealed from, there can be no doubt (Gantt's Dig., secs. 1101, 1104); and inasmuch as his lands only were sold to satisfy the judg-

ment, he has no very just cause to complain that his sureties in the supersedeas bond were included in the judgment, etc.

But we will, nevertheless, proceed to consider whether the court had jurisdiction to render judgment against the sureties.

It is contended that the rendering of the judgment against them was the exercise of original and not of appellate jurisdiction.

It may be conceded for the purposes of this case, without going into a question heretofore much mooted, that the supreme court, under the constitution of 1868, had appellate and supervisory jurisdiction only, to be exercised in the manner prescribed by law. Art. VII., secs. 4, 5, 15.

That the time and mode of taking and prosecuting appeals and writs of error, and the indemnification of parties against cost, damages and losses from delays, or stays of execution, were proper subjects of legislation, under the constitution of 1868, as well as under the constitution of 1836, and under the present constitution, there can be no doubt.

Judgments of the circuit courts are brought into this court for review, by writ of error or appeal, and neither the issuance of a writ of error nor the granting of an appeal stays execution of the judgment of the court below without supersedeas. Gantt's Dig., secs. 1056, 1057, 1058, 1083-4.

A supersedeas is not issued until the appellant causes to be executed, before the clerk of the court which rendered the judgment, or the clerk of the supreme court, by one or more sufficient sureties, to be approved by such clerk, a bond to the effect that appellant will pay to the appellee all costs and damages that may be adjudged against the appellant, on the appeal, and also that he will satisfy and perform the judgment appealed from, in case it should be affirmed, and any judgment which the supreme court may render, etc. Gantt's Dig., sec. 1083.

Upon the affirmance of a judgment, etc., for the payment of money, the collection of which, in whole or in part, has been superseded, this court is required to award against the appellant ten per cent. damages on the amount superseded. Gantt's Dig., sec. 1101.

Upon the affirmance of any judgment, etc., which has been wholly or in part superseded, judgment may be rendered against the securities on the supersedeas bond, and execution awarded thereon.   Id., sec. 1102.

Thus, taking the provisions of the statutes together, the appellant, who desires a stay of execution pending an appeal, causes a supersedeas bond to be executed, and the sureties on the bond become, in legal effect, parties to the suit, and agree that if the judgment be affirmed, judgment may be rendered against them by the supreme court, for costs, damages, and the amount of the judgment below, etc., the statute authorizing this judgment being part of their contract as fully as if incorporated into the supersedeas bond executed by them.

The awarding of costs, damages, and the rendering of judgment against the sureties in the supersedeas bond, as well as the appellant on affirmance, is but the exercise of jurisdiction in matters growing out of or incidental to the appeal, and not in any proper sense the exercise of original jurisdiction. No new cause of action or subject matter of jurisdiction is brought before this court on the appeal by the execution of the supersedeas bond, but the sureties in the bond merely agree that judgment may be entered against them, as well as the appellant on affirmance for the amount of the judgment appealed from, with costs and damages, which are incidents of the appeal and stay of execution.

The sureties in the bond are, in legal effect, new parties to the suit, but the subject matter of the suit continues to be the same in which the court below rendered the judgment

appealed from, and the rendering of judgment against new parties is not the exercise of original jurisdiction as to the subject matter of the suit in this case, any more than it is where the appellant or appellee dies after the appeal is taken, and his administrator, executor or heirs, are made parties, and judgment rendered for or against them on affirmance or reversal, which frequently occurs. See *Carpenter v. Thomas*, 5 Mich., 52; *Davidson v. Farrell*, 8 Minn., 258; *Duncan v. McGee*, 7 Yerger, 103. In this case judgment was rendered by the supreme court of Tennessee against the sureties in the supersedeas bond. See also *Wright v. Simmons, et al.*, 1 Sm. & Mar., 389.

Prior to the passage of the act of 1871 (Gantt's Dig., 1102), authorizing this court to render judgment against the sureties in the supersedeas bond, on affirmance, the appellee had to resort to an original suit upon the bond or recognizance, and was subjected to the delay and expense of prosecuting the suit; and the statute authorizing a summary judgment against the sureties, in accordance with their undertaking, and avoiding such delay and expense, has much to commend it.

To the argument of counsel, that the sureties have no day in court, it may be answered, that they have the same day in court that the appellant has, having, in legal effect, made themselves parties to the appeal, and agreed to abide and satisfy the judgment.

But it is said by counsel, that the sureties may wish to plead *non est factum* to the bond, and this being a court of appellate jurisdiction only, the law has provided for no jury to try an issue to such plea.

To this it may be replied, that the statute requires the bond to be executed before the clerk, whose duty it is to see that the sureties in fact execute the bond, conditioned as required by the statute, that they are not infants, married

women, insane, or otherwise incapable of contracting, and that they are responsible for what they answer. Though not taken by the clerk in the form of a recognizance of record, the execution and approval of the bond are attended with very much the same solemnity.

When an apparent surety in a supersedeas bond shall come before this court and object to the rendering of a judgment against him on affirmance of the judgment appealed from, on the ground that he did not in fact execute the bond, or on any other ground, it will be then time enough for the court to determine how the truth and validity of the matter is to be inquired into and decided.

In the case of *Carpenter v. Thomas*, cited above, the supreme court of Michigan said:

" This bond (appeal bond) is, we think, to be read in all respects as if the whole of the statute in reference to the appeal, the bond, and mode of entering up judgment upon it, were recited at large in the bond. And in this view, it becomes a direct judgment in this manner, and stands upon a principle analogous to that of a warrant of attorney. It is true, the authority is here given to the court instead of one of its officers, as the attorney of the party, but this is a difference of form rather than substance.

" The constitutional prohibition against 'depriving any person of his property without due process of law' was obviously intended only to protect persons from being deprived of their property without their assent, unless by due process of law. The constitution would become a very officious instrument, if it sought to force its protection upon any man against his will.

" A similar answer may be made in reference to the provision securing trial by jury in civil cases. This right may always be waived ; and the assent of the surety to the entry of judgment, on motion, is clearly given in the bond."

And in *Davidson v. Farrell*, cited above, the supreme court of Minnesota said :

" This judgment against the surety (in the appeal bond) is authorized by law, and the only question that can properly arise in relation to the point is, whether the law itself is in conflict with the provisions of the constitution."

The court then quotes the provisions of the statute authorizing judgment against the surety, and proceeds thus :

" We see nothing in these provisions inconsistent with the fundamental law. The law does nothing more than to provide the form and manner in which the agreement entered into by the surety shall be enforced. And the surety, in becoming a party to the bond, under the law as it then existed, assents to and adopts those provisions for the enforcement of the contract he has entered into with the obligee of the bond. *Haywood v. Judd*, 4 Minn., 495. The law has declared what liability the surety assumes in signing such a bond, to-wit : that a judgment against his principal shall also warrant a judgment against him. In effect, it is making the judgment against his principal conclusive evidence of the liability of both upon the bond ; and the surety, becoming voluntarily a party to the bond under the law, must be held to have assented to assume all the obligations imposed by the law then in force upon a party holding that relation, etc.

" This view of the case renders it unnecessary to inquire into the meaning attached by the framers of the constitution to the phrase, 'due process of law,' since, if the party has himself authorized the process, whatever it be, he cannot be permitted to object to the same, and the authorities cited by plaintiff in error we think not applicable to the case at bar."

Our conclusion is that the judgment rendered by this court against White and his sureties in the supersedeas bond on which the executions issued, was not null and void for want f jurisdiction.

II. Was the sheriff bound to accept state scrip in payment of the judgment?

The original suit was commenced in the Jefferson circuit court, and removed, by change of venue, to Grant circuit court.

Prigmore sued White for the office of recorder of Jefferson county, and the fees and emoluments thereof which accrued between the 7th of April, 1871, and the 22d of March, 1872, amounting, as alleged in the complaint and stated in the bill of particulars, to $1,816.60.

White, in his answer, denied having received fees amounting to so much as alleged in the complaint. He admitted that he had received for recording deeds, etc., after deducting county tax, $1,110.00, and alleged that he had paid out more than that sum in expenses of the office. The cause was tried by a jury, and there was a verdict and judgment in favor of Prigmore for one thousand, one hundred and ten dollars damages.

It is insisted that inasmuch as the fees of the recorder were payable in state scrip, under sec. 9, art. XV of the constitution of 1868, as construed by this court in *Ramsey v. Cox*, 28 Ark., 366, White had the right to pay the judgment in such state scrip, and that the sheriff could not legally sell the lands of White, under the execution issued on the judgment, after a tender of the scrip.

In the answer of White to the complaint, he did not state that any of the fees of the office were received by him in state scrip. If in fact he received the fees in scrip, and not in money, he should have so alleged, and on proof of the allegation, and the value of the scrip, the verdict might have been for the value of the paper. But having failed to interpose such defense, it was too late after judgment to avail of a neglected defense, by a tender of scrip to the sheriff in satisfaction of a judgment for money.

The petition avers a tender to the sheriff, before the sale of the lands, in state scrip or treasury certificates, of the full amount of the judgment and costs, and refusal of the sheriff to accept.

. Had there been a separate and distinct tender of the amount of the costs in state scrip, the sheriff would have been bound, under the decision of this court above referred to, to have accepted it.   But the tender made seems to have been an offer to pay the judgment (a money demand) and costs in state scrip — one entire proposition — which the sheriff was not at liberty to accept, and properly declined.

In the petition, no irregularities are alleged in the sale of the lands on a credit, the taking of the bond, with surety, for the purchase money, the return of nonpayment, and the issuance of execution on the statutory judgment.   The motion to recall and quash the execution, set aside the sale, etc., is based upon the main proposition that the judgment rendered by this court against the sureties in the supersedeas bond was void for want of jurisdiction, and that the subsequent proceedings were consequently invalid.

The motion is overruled, and the temporary supersedeas granted on the petition is revoked.